FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ DEC 07 2018 ★
LONG ISLAND OFFICE

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ APR 21 2017 ★
LONG ISLAND OFFICE

JJD:LTG

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - X

IN THE MATTER OF AN APPLICATION FOR
A SEARCH WARRANT FOR THE PREMISES
KNOWN AND DESCRIBED AS SAFE DEPOSIT
BOX NUMBER ▮▮, LOCATED AT TD BANK,
2822 MIDDLE COUNTY ROAD, LAKE GROVE,
NEW YORK, 11755.

- - - - - - - - - - - - - - - - - - - - - X

**TO BE FILED UNDER SEAL**

AFFIDAVIT IN SUPPORT OF
APPLICATION FOR SEARCH
WARRANT

MJ 17-360

EASTERN DISTRICT OF NEW YORK, SS:

MICHAEL WENIGER, being duly sworn, deposes and states that he is a Special Agent with the Federal Bureau of Investigation ("FBI"), duly appointed according to law and acting as such.

Upon information and belief, there is probable cause to believe that there is located in THE PREMISES KNOWN AND DESCRIBED AS SAFE DEPOSIT BOX NUMBER ▮, LOCATED AT TD BANK, 2822 MIDDLE COUNTY ROAD, LAKE GROVE, NEW YORK, 11755 (the "SUBJECT BOX"), the things described in Attachment A, all of which constitute evidence, fruits and instrumentalities of a conspiracy to obstruct justice, in violation of 18 U.S.C. § 1512(k).

The source of your deponent's information and the grounds for his belief are as follows:[1]

1. I am a Special Agent with the Federal Bureau of Investigation ("FBI"), and have worked for the FBI for approximately six years. During that time, I have conducted

---

[1] Because this affidavit is submitted for the limited purpose of establishing probable cause for the search warrant, I have not set forth each and every fact learned during the course of the investigation.



numerous investigations involving civil rights violations and obstruction of justice including conspiracies to commit same.

2. I have personally participated in the investigation of the offenses discussed below. I am familiar with the facts and circumstances of this investigation from the following: (a) my personal participation in the investigation; (b) reports made to me by other law enforcement authorities; (c) information provided by a cooperating witness (the CW); (d) information provided by two cooperating sources (CS #1 and CS #2); and (e) a review of telephone records and bank records.

3. Based on the facts set forth in this affidavit, there is probable cause to believe that a violation of 18 U.S.C. §1512(k) (conspiracy to obstruct justice) has been committed by James Burke ("BURKE"),[2] the former Chief of Department for the Suffolk County Police Department ("SCPD"), Christopher McPartland ("MCPARTLAND"), the Chief of Investigations for the Suffolk County District Attorney's Office ("SCDAO"), Thomas Spota ("SPOTA"), the Suffolk County District Attorney, and others including ███ ███████████. There is also probable cause to search the SUBJECT BOX for evidence, instrumentalities, contraband, or fruits of these crimes as further described in Attachment A.

---

[2] As set forth in more detail below, on February 26, 2016, BURKE pled guilty to a civil rights violation and to conspiracy to obstruct justice, and was sentenced to 46 months in prison, which sentence he is currently serving.

2

## I. THE SUBJECT BOX

4. The SUBJECT BOX is box number 251, a 5" x 10" safe deposit box located at TD Bank, 2822 Middle County Road, Lake Grove, New York, 11755 (the "TD BANK LOCATION"). According to records obtained from TD Bank, on or about February 24, 2016, the SUBJECT BOX was leased by ████ and CS #1.[3] I am aware, and have been informed by CS #2, that ████████████.[4] CS #1 describes himself as a childhood friend of BURKE'S.[5]

## II. PROBABLE CAUSE TO SEARCH THE PREMISES

5. According to numerous civilian witnesses and current and former law enforcement witnesses whose identities are known to the government, on December 14, 2012, members of the SCPD arrested John Doe, an individual whose identity is known to the government, in connection with a series of burglaries of items from vehicles in the Smithtown, New York area. One of the vehicles that John Doe broke into was a SCPD vehicle assigned to BURKE from which John Doe stole a duffle bag belonging to BURKE, which contained a gun belt, magazines with ammunition, and various personal items. Following his arrest, John Doe was transported to the SCPD Fourth Precinct in Hauppauge, New York, where he was

---

[3] CS #1 indicated that he and ████ leased the SUBJECT BOX at BURKE'S request once BURKE was incarcerated.

[4] ████████████████████████████

[5] The information provided by CS #1 has been corroborated by other sources, including other witnesses and documentary evidence, including telephone records.

3

questioned regarding the vehicle break-ins and made various inculpatory statements. According to numerous witnesses, during the course of the questioning, John Doe was assaulted by BURKE and others.

6. During the subsequent prosecution of John Doe in Suffolk County Court, John Doe alleged that his confession was involuntary because he had been beaten by BURKE and others, which allegations later became public. In April 2013, the FBI and the United States Attorney's Office for the Eastern District of New York ("USAO-EDNY") initiated a grand jury investigation to determine whether any members of the SCPD had violated John Doe's civil rights. According to several witnesses, including, without limitation, the CW[6], following the assault of John Doe, BURKE, SPOTA, MCPARTLAND, and other members of the SCPD orchestrated an extensive cover-up to obstruct the federal investigation into the assault of John Doe.

7. For example, on June 25, 2013, the morning the FBI began serving grand jury subpoenas on SCPD members, BURKE directed the CW, among other things, to gather the SCPD members who had been served to find out what each had said to the FBI agents and make sure they were keeping quiet. Further, BURKE reassured the CW that he had SPOTA and MCPARTLAND on his side. That same morning, the CW spoke with MCPARTLAND,

---

[6] The CW has plead guilty to Conspiracy to Obstruct Justice, pursuant to a cooperation agreement with the government, in connection with the obstruction of the federal investigation into the assault of John Doe by BURKE and others, and is awaiting sentence. The information provided by the CW has been corroborated by other sources, including other witnesses and documentary evidence, including telephone records.

who directed the CW to debrief the SCPD members who had been served by the FBI and to control them. An analysis of toll records for June 25, 2013, confirms communications amongst BURKE, MCPARTLAND, SPOTA and the CW.

8. Initially, the efforts to obstruct the federal investigation were successful and, as of May 2015, the investigation had not resulted in any criminal charges. Several witnesses have informed the government that BURKE, MCPARTLAND, SPOTA and others believed that the federal investigation had been concluded. However, according to the CW, in June 2015, BURKE learned through various sources that the grand jury investigation was not over, and was in fact active.

9. The CW further advised that between June 2015 and December 2015, multiple meetings took place at which the conspiracy to obstruct the federal investigation continued. According to the CW, these meetings included the CW, BURKE, SPOTA, MCPARTLAND and sometimes others. According to the CW, during these meetings, a strategy was formulated to protect BURKE by making sure the officers who had knowledge of BURKE'S assault of John Doe refused to cooperate with the federal investigation. The CW was present for these meetings and advised that SPOTA and MCPARTLAND were active members of this conspiracy to obstruct, and that BURKE, SPOTA and MCPARTLAND pressured the CW to make sure that the officers with knowledge of BURKE'S actions (who worked directly for the CW) did not cooperate with the investigation.

10. Historical cell tower and other service provider records confirm that BURKE, SPOTA, MCPARTLAND and the CW were at the various locations at which the CW indicates the obstruction meetings occurred. Other law enforcement officers confirm the occurrence of the meetings, and CS #2, an immunized police officer witness testified under oath in the grand jury, that the conspiracy to obstruct justice extended to the subornation of perjury at John Doe's suppression hearing in order to protect BURKE. In fact, CS #2 testified that the strategy to force an officer to give perjured testimony to protect BURKE was formulated by MCPARTLAND.

11. Despite the efforts to obstruct the federal investigation, on December 8, 2015, a grand jury returned a two-count indictment charging BURKE with deprivation of John Doe's civil rights, in violation of 18 U.S.C. § 242, and conspiracy to obstruct justice (between December 2012 and the date of the indictment), in violation of 18 U.S.C. § 1512(k). BURKE was arrested, arraigned and ordered detained pending trial the following day. On February 26, 2016, BURKE pled guilty to both counts of the indictment and, on November 2, 2016, BURKE was sentenced to 46 months in prison by the Honorable Leonard D. Wexler.

12. Thereafter, on February 27, 2017, CS #1 was interviewed by the government and advised that on or about February 18, 2016, MCPARTLAND contacted CS #1 and asked CS #1 to meet him at a local Chinese restaurant (the "Restaurant"). Several days later, CS #1 met MCPARTLAND at the restaurant and, during the course of the conversation MCPARTLAND asked CS #1 to loan him $25,000 for lawyers' fees. CS #1 advised that,

while he had socialized with MCPARTLAND through his friendship with BURKE, he did not know MCPARTLAND that well and he did not feel comfortable loaning him the amount of money requested, so he declined. Then MCPARTLAND began to cry, thus, CS #1 said he would think about loaning MCPARTLAND the money.

13. Then, on February 25, 2016, CS #1, and three other individuals whose identities are known to the government, visited BURKE at the Metropolitan Detention Center in Brooklyn, New York. During that jail visit, CS #2 informed BURKE that MCPARTLAND had asked CS #1 for a $25,000 loan. At the conclusion of the jail visit, BURKE told CS #1 that he would provide CS #1 the $25,000 in cash and told CS #1 to tell MCPARTLAND that he, CS #1, would "get" MCPARTLAND the money.

14. Shortly after the February 25, 2016 jail visit, ▮ and CS #1 spoke on the telephone. During that conversation, ▮ told CS #1 that BURKE wanted to "help" MCPARTLAND, and that ▮ was going to give CS #1 $25,000 in cash to give to MCPARTLAND.

15. Then, the next day, ▮ contacted CS #1 and asked CS #1 to meet at the TD BANK LOCATION, which they did. Then CS #1 and ▮ removed the SUBJECT BOX, opened the SUBJECT BOX and ▮ counted out $25,000, which ▮ gave to CS #1 to give to MCPARTLAND.

7

16. CS #1 indicated that he observed other papers and additional U.S. Currency in the SUBJECT BOX once ▇ finished counting out the $25,000.[7] According to CS #1, it was never made clear to him why ▇, who knew MCPARTLAND very well, did not give MCPARTLAND the money himself.

17. Shortly thereafter, CS #1 took the $25,000, called MCPARTLAND and met MCPARTLAND in the parking lot of Restaurant where they had met previously. In the parking lot, CS #1 handed MCPARTLAND the cash and MCPARTLAND thanked CS #1. CS #1 replied, in sum and substance, don't thank me, I'm not the one to thank. MCPARTLAND then immediately put up his hands in a "stop" motion indicating, according to CS #1, that he, MCPARTLAND, did not want to know where the money came from. Then, MCPARTLAND promised to provide CS #1 with a promissory note indicating that he, MCPARTLAND, would pay back the $25,000. However, according to CS #1, to date, MCPARTLAND has never followed through with that promise.

18. Then, on February 8, 2017, CS #1 was served with a Grand Jury subpoena returnable February 22, 2017. Thereafter, CS #1 called ▇ and advised ▇ about the subpoena, including the return date of February 22, 2017. CS #1 also informed BURKE of the subpoena.

---

[7] Records received via subpoena from TD Bank reveal that on February 29, 2016, ▇ accessed the SUBJECT BOX.

19. Then, on February 21, 2017, according to the TD Bank records, ▮ went to the TD BANK LOCATION and accessed the SUBJECT BOX. According to TD Bank records, dated March 20, 2017, ▮ has not been back to the SUBJECT BOX since that date, but the lease is still active.

### III. CONCLUSION

20. Accordingly, based on the aforementioned information, as well as my training and experience, your deponent respectfully submits that there is probable cause to believe that there will be found in the SUBJECT BOX the items set forth in Attachment A, which constitute evidence of the commission, or fruits or instrumentalities, of a violation of 18 U.S.C. §1512(k), conspiracy to obstruct the investigation of a civil rights violation. In the alternative, the absence of items found in the SUBJECT BOX will constitute evidence of the commission, or fruits or instrumentalities, of a violation of 18 U.S.C. §1512(k), conspiracy to obstruct the investigation into the obstruction of justice conspiracy.

21. WHEREFORE, your affiant respectfully requests that a search warrant be issued, pursuant to Rule 41 of the Federal Rules of Criminal Procedure, authorizing members of the FBI and other law enforcement officers to search the SUBJECT BOX and therein to seize certain property, namely, the items described on Attachment A, all of which constitutes evidence, fruits and instrumentalities of a conspiracy to obstruct justice, in violation of 18 U.S.C. § 1512(k).

WHEREFORE, it is respectfully requested that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the affidavit and search warrant. I believe that sealing these documents is necessary because the items and information to be seized are relevant to an ongoing investigation and much of the information contained in this affidavit was provided by the CW and the two Confidential Sources and the public disclosure of that information at this time could jeopardize the safety of those individuals and their family members. In sum, premature disclosure of the contents of this affidavit and related documents may have a significant and negative impact on the continuing investigation and may severely jeopardize its effectiveness.

SPECIAL AGENT MICHAEL WENIGER
Federal Bureau of Investigation

Sworn to before me this
21st day of April, 2017

THE HONORABLE GARY R. BROWN
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

# ATTACHMENT A
## Property to be Seized

The property to be seized includes any items, including but not limited to U.S. Currency and any documents, that are maintained within THE PREMISES KNOWN AND DESCRIBED AS SAFE DEPOSIT BOX NUMBER ███, LOCATED AT TD BANK, 2822 MIDDLE COUNTY ROAD, LAKE GROVE, NEW YORK, 11755 (the "SUBJECT BOX"), and any other closed or locked containers that may be further secured by key locks (or combination locks) of various kinds, all of which constitute evidence, fruits and instrumentalities of a conspiracy to obstruct justice, in violation of 18 U.S.C. § 1512(k).